IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**UNITED STATES OF AMERICA**

v.                                          Criminal No. 2:17-cr-23-KS-MTP

**DEXTER JONES**

## ORDER

This cause comes before the Court on the Motion to Reconsider Order Denying Sentence Reduction [366] filed by Defendant Dexter Jones, in which he asks this Court to reconsider the Order entered denying his request for a sentence reduction based on Part A of Amendment 821 to the Sentencing Guidelines [364]/[365]. The Government has responded [369], to which Defendant has not filed a reply. Having reviewed the parties' submissions, the Court finds that the Motion is not well taken and will be denied. Even if Defendant were eligible for relief, this Court would not grant a sentence reduction due to Defendant's criminal history and other relevant Section 3553(a) factors.

I.   BACKGROUND

In November 2017, a federal grand jury returned a two-count indictment of Defendant Jones for one count of conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). [5]. In April 2018, Defendant pleaded guilty to Count 2 of the indictment. [133]. In preparation for sentencing, the United States Office of Probation prepared a written presentence investigation report ("PSR") that provides background on the Defendant, as well as the circumstances of the crime at issue and Sentencing Guideline calculations. *See* [176] (filed under restricted view). According to the PSR, which was adopted in

this case, beginning in 2015, agents with the Drug Enforcement Administration ("DEA") and the Mississippi Bureau of Narcotics ("MBN") began investigating a drug trafficking organization ("DTO") based out of Hattiesburg and Laurel, Mississippi. [176] at ¶ 25. During the investigation, agents identified Defendant Jones and several of his associates as individuals associated with the DTO. *Id.*[1]

In calculating what the recommended sentence should be under the Sentencing Guidelines, for his role in the conspiracy, as well as the amount of methamphetamine attributable to him, Defendant received a base offense level of 38, but after the relevant enhancements and deductions were applied, the total offense level was 43. [176] at ¶¶ 129. 141. For his criminal history score, Defendant received three points; however, because he committed the instant offense while under a criminal justice sentence for DUI in Jones County, he received two additional "status points," for a total of five points. *Id.* ¶¶ 151-153. With a total of five points, Defendant's criminal history category was III.[2] *Id.*

Based upon a total offense level of 43 and a criminal history category of III, the guideline imprisonment range is life. *Id.* ¶ 176. At sentencing hearing held on September 6, 2018, this Court sentenced Defendant to life in prison. [189]. Subsequently on December 8, 2020, the Court reduced Defendant sentence from a term of life to 300 months. [315].

Due to the retroactive nature of Amendment 821 to the Sentencing Guidelines, in July 2025, the Court considered the Amendment's applicability to Defendant's sentence and declined to reduce his sentence. [364]/[365]. Defendant has now filed the instant Motion, requesting that the Court reconsider its decision. [366].

---

[1] The full details of the DTO are not relevant to the Court's analysis and need not be recited here.
[2] The PSR paragraph cited contains an error and lists Jones's total criminal history computation as six instead of five.

## II. DISCUSSION

### A. Amendment 821-Part A

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision for determining a defendant's criminal history, which now appears in Section 4A1.1(e). The version of Section 4A1.1 applicable when Defendant was sentenced stated in relevant part: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d) (version prior to Amendment 821).

However, the amended provision now states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1(e) (Nov. 1, 2023, amend. 821). Thus, a person who committed the instant offense under certain conditions and has otherwise received 7 or more criminal history points now receives only one additional "status" criminal history point, instead of two, while a person who committed the instant offense under certain conditions and has otherwise received fewer than 7 criminal history points receives no additional status points.[3]

In *Dillon v. United States*, the Supreme Court addressed the process for application of a retroactive guideline amendment under Section 1B1.10 when it declared: "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission." 560 U.S. 817, 821 (2010). The Court, thus, requires district courts to follow a two-step approach:

---

[3] In August 2023, the Sentencing Commission decreed that this change applies retroactively. The Commission further directed that a court granting relief may not order the release of a defendant to occur any earlier than February 1, 2024. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

3

> *At step one*, § 3582(c)(2) requires the court to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Ibid.*
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, §1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. §1B1.10(b)(2)(A). . . .
>
> *At step two* of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Id.* at 827.

### B. Amendment 821-Part A as Applied to Defendant

Unfortunately for Defendant Jones, if he were sentenced today, he would not be eligible for a sentence reduction. It is true that under the prior version of §4A1.1, when the two points were added to his criminal history score because he committed the crime of conviction while under a criminal justice sentence, his criminal history score increased from 3 to 5. It is also true that with only a 3-point score under the amended rendition of § 4A1.1(e), there would be no additional status point added because Defendant had fewer than 7 criminal history points. Accordingly, a 3-point criminal history score results in a criminal history category of II (rather than a III with the 5 points).[4] Regardless, changing the criminal history category does nothing to lower the guideline range for Defendant because with a total offense level of 43, his guideline sentence was life, and

---

[4] *See* GUIDELINES SENTENCING TABLE (establishing a criminal history category of II for defendants with a criminal history score of 3) (Nov. 2024 ed.), which can be found at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2024/Sentencing_Table.pdf

no matter a defendant's criminal history category is, with that high an offense level, the guideline range is always a sentence of life.[5]

Even though Defendant concedes that his sentence range would be unchanged under the Amendment,[6] he attempts to avoid this fate by making a rather specious argument that his offense level is actually 37 due to the Court previously lowering his sentence to 300 months. Defendant extrapolates this new offense level by determining that 300 months falls within the sentencing range of 262 to 327 months, and such range results when a defendant with a criminal history category of II (as calculated under the Amendment) has an offense level of 37. As such, Defendant asks the Court to order a sentence within that range.

The Court finds that no further relief is warranted and declines to adjust Defendant's sentence for three reasons. First, Defendant has provided no legal support for such a novel theory of recalculation. There is nothing in Amendment 821 about adjusting the Total Offense Level to arrive at a new sentencing range, and the Court's decision to reduce the sentence was unrelated to the factors that made up the Total Offense Level of 43. Therefore, nothing in that regard has changed, and so it remains at 43. Second, Defendant's sentence of 300 months *is already* within the newly calculated range, and the Court finds no reason to reduce the sentence further by, at most, 38 months (to the lowest end of the range). And third, the Court declines to do so because of the Section 3553(a) sentencing factors.

### C.     18 U.S.C. § 3553(a) analysis

Recall that under *Dillon*, there are two steps to this process. Turning to step two, Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in

---

[5] *See* GUIDELINES SENTENCING TABLE (establishing a sentence of life for all criminal history categories when offense level is 43) (Nov. 2024 ed.), which can be found at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2024/Sentencing_Table.pdf
[6] [366] at p. 3-4.

determining . . . whether a reduction in the defendant's term of imprisonment is warranted." *Id.* app. note 1(B)(i); *see also* U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

Subject to the limits set forth in Section 1B1.10(b), the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court is to consider public safety considerations and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." US.S.G. § 1B1.10, cmt. n. 1(B)(ii).

The relevant Section 3553(a) factors the court may consider include: (1) nature and circumstances of the offense and the history and characteristics of the defendant; (2) need for the sentence imposed including, (A) seriousness of the offense, promote respect for the law, and provide just punishment for the offense, (B) afford adequate deterrence, and (C) protect public from further crimes of the defendant; and (3) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

These were the very factors the Court considered initially in imposing upon Defendant the guideline range of life imprisonment. As for the nature and circumstances of the offense and the history and characteristics of the defendant, Defendant was convicted of possession with intent to distribute more than 50 grams of actual methamphetamine. [189]. Such an offense is presumptively dangerous. 18 U.S.C. § 3142(a)(4), (e)(3)(A); *United States v. Beaumont*, 759 F. Supp. 339, 340

6

(E.D. Tex. 1991) ("Drug offenses are by their nature dangerous to the community."). "Courts have long recognized, however, that drug dealing constitutes a danger and threat to the community." *United States v. Zermeno*, 2024 WL 4043445, at *8 (E.D. Tex. 2024).

As the Government points out, the primary reason for this Defendant's lengthy sentence was due to both his high base offense level and the multiple enhancements that he received. From April 2017 through June 2017, the DTO received at least forty pounds of methamphetamine. [176] at ¶ 118.[7] For his role in the DTO, at least 4.5 kilograms of methamphetamine was attributable to Defendant Jones alone, resulting in his base offense level of 38. *Id.* Defendant then received numerous enhancements due to the multiplicity of aggravating factors surrounding his criminal conduct. *Id.* at ¶¶ 130-137.[8] This Court was justified in sentencing Defendant Jones to life imprisonment and subsequently granting a reduction to 300 months. His actions were inherently dangerous, and he possesses an extensive criminal history. The nature of the offense, as well as his personal history and characteristics all support the Court's initial decision to deny relief under Amendment 821. As such, this § 3553(a) factor weighs against granting further relief.

Additionally, as to the factor of the need for the sentence imposed, as the Government correctly points out, the Court considered all relevant factors in fashioning a sentence and has additionally already granted relief to Defendant \ in the form of a reduction of his life sentence to 300 months (25 years). The sentence imposed properly held him accountable for this serious criminal conduct, and with the reduction, such a term of incarceration is needed to deter future criminal conduct both from Defendant and from others. This Defendant has already been convicted multiple times. [176] at ¶¶ 143-150. However, despite possessing multiple convictions, Defendant

---

[7] As the PSR states, based on the total investigative work performed by law enforcement, "[t]his is likely a conservative estimate." [176] at ¶ 118.
[8] Moreover, Defendant's current offense is not his first. As this Court stated at the sentencing, "And there has been an extensive criminal record, that [Jones] ha[s] an extensive criminal record as shown by the presentence report." [199] at p. 52.

recidivated and committed the instant offense. Even though Defendant would no longer receive any status points if he were convicted today, the fact remains that he did commit his instant offense while already under a criminal justice sentence out of Jones County. *Id.* at ¶ 152. Additionally, Defendant has a history of flouting court decisions, as evidenced by his fifteen convictions for contempt of court for failing to pay his outstanding fines. *Id.* at ¶ 154. Defendant's current sentence is necessary to ensure he does not recidivate again and endanger himself or others. This § 3553(a) factor also weighs against granting further relief.

As one court aptly, said, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). Here, the Guideline range was not reduced, but even if it were, not only does Defendant's current sentence fall within the range sought, but also the Court finds that no further reduction is warranted based on the Section 3553(a) factors.

### III. CONCLUSION

For the reasons stated herein, the Motion to Reconsider Order Denying Sentence Reduction [366] filed by Defendant Dexter Jones is hereby DENIED.

SO ORDERED AND ADJUDGED this 6th day of August 2025.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE